# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CORTNEY BRYANT-EL | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-18-0084 |
| MARY JANE ROSE, DONALD BENNETT, KD, | * | |
| | * | |
| Defendants | * | |

***

## MEMORANDUM

Cortney Bryant-El is an inmate at the North Branch Correctional Institution (NBCI) in Cumberland, Maryland, who is proceeding as a self-represented plaintiff in this civil rights action filed pursuant to 42 U.S.C. § 1983. He alleges that defendants violated his rights under the First Amendment to the United States Constitution and under unspecified Maryland state law. Complaint, ECF 1. Defendants Mary Jane Rose and Donald Bennett,[1] via their counsel, filed a Motion to Dismiss or Motion for Summary Judgment. ECF 15. Bryant-El filed an opposition supported by his declaration. ECF 19, 19-3. Defendants filed a Reply with a declaration. ECF 20, 20-1. The case is ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For reasons discussed below, defendants' Motion to Dismiss or for Summary Judgment will be granted.

## BACKGROUND

In his complaint, Bryant-El alleges that his rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution were violated

---

[1] Bryant-El did not effectuate service on Defendant "KD." For reasons discussed in this memorandum, even had service been effectuated on KD, the claims against him would not prevail.

because his mail has been delayed or denied to him on several occasions. ECF 2 at pp. 2–3. Specifically, he states that he paid $150.00 to Ms. Carolyn Flores, the owner of ConPals.com, to create an internet webpage profile for him. *Id.* at p. 3. On February 23, 2017 and March 6, 2017, Flores sent two pictures to him at NBCI through the United States Postal Service by first class mail. *Id.* Bryant-El states that he never received the pictures. *Id.* Flores then mailed the pictures a third time, this time posting them by certified mail, and Bryant-El received them on April 28, 2017. *Id.; see also* Flores email, ECF 15-2 at p. 3.

Bryant-El also alleges that two photos sent by his cousin Javon Beasley were being withheld because they contained nudity. *Id.* at p. 6. Bryant-El states he received notice about two explicit photographs from someone who works in the mailroom who identified him or herself as "KD." *Id.* Bryant-El also alleges in the Complaint that Captain Werner informed him that there were sixteen other photos and one letter, all from Javon Beasley, that had been withheld for approximately one month and eighteen days. *Id.* Bryant-El states that he received no explanation for the delay in giving him the letter and sixteen photographs. *Id.*. Werner denies telling Bryant-El about the additional sixteen pictures and one letter withheld from him. ECF 20-1 at 1. ECF 20-1 at ¶5.

Bryant-El argues there was no penological reason for not forwarding him the mail with the two pictures sent to him by Flores. On May 13, 2017, he filed an administrative remedy procedure (ARP) request, asserting that he was not receiving his mail and that he believed some of his mail was returned without his knowledge. ARP NBCI-1093-17, ECF 15-2 at p. 1. Captain Werner[2] investigated the complaint and interviewed Bryant-El. ECF 15-2 at p. 5. Bryant-El claims that it was during this interview that Werner told him that Mary Jane Rose and Donald Bennett were

---

[2] Werner is identified in his declaration as holding the rank of major. ECF 20-1 at ¶ 1

primarily responsible for handling the mail. ECF 1 at pp. 5–6.

Bryant-El is suing defendants in their individual and official capacities. *Id.* at p. 7. He claims Rose and Bennett violated his First Amendment rights by not forwarding his mail to him. *Id.* at p. 4. He claims that Rose, the mail room supervisor and Bennett, a mail room employee, violated his rights under the Equal Protection Clause of the Fourteenth Amendment by failing to follow departmental regulations. *Id.* at 4–5, 7. As relief, he seeks "defendant Bennett. Five Thousand Dollars punitive damages and Five Thousand Dollars Compensatory damages against Defendant KD." *Id.* at p. 7.[3] Bryant-El's complaint is unverified.

In response to Bryant-El's complaint, the defendants filed their motion to dismiss or for summary judgment. ECF 15. They attached documents related to Werner's investigation of Bryant-El's ARP complaint, including documentation of Werner interviewing Bryant-El, contacting mailroom staff, and reviewing the ConPals correspondence. ECF 15-2 at pp. 5–6. After completing the inquiry, Werner recommended dismissing the ARP. ECF 15-1 at p. 3. Werner concluded that Bryant-El could provide no tangible evidence to substantiate his claim beyond correspondence from ConPals. ECF 15-2 at p. 6. Werner determined that the letter did not provide any "factual physical evidence beyond the author making the alleged claim." *Id.* He noted that the facility had "two pieces of tangible evidence" in the form of "Notices to Withhold Mail" that corroborated mailroom compliance with institutional mail policy. *Id.* Werner also contacted the mailroom to confirm there were no other records of holds for Bryant-El on file. ECF 15-2 at pp. 6, 7; *see also* Werner Aff. ECF 20-1 at ¶ 5.

Based on these findings, the institutional ARP Coordinator determined that Bryant-El's

---

[3] Bryant-El states in his Response that he is seeking punitive damages of $10,000 and compensatory damages of $5.000 against Rose, punitive damages of $10,000 and compensatory damages of $5,000 against Bennett, and $5,000 punitive and $5,000 compensatory damages against "KD." ECF 19 at 3.

ARP was without merit, and dismissed it on June 2, 2017 in accordance with DCD-185-001, ECF 15-2 at p. 1, and informed him:

> [Y]ou claim that your incoming mail was returned or withheld without your knowledge and/or permission. While you offer a letter from CONPALS InmateConnections.com as proof, no tangible evidence exists beyond that letter of allegation to substantiate your claim. Mail is handled in accordance with OPS.250.0001 and NBCI.250.0001 with the facility having two (2) pieces of tangible documented evidence, dated 2/3/17 and 5/22/17, to support that existing policy is being followed.

ECF 15-2 at p. 6.

The Division of Correction's inmate mail policy is to "permit an inmate to correspond with family, friends, officials, and other significant community contacts with a minimum of interference and consistent with the legitimate security needs of a correctional or detention facility." Executive Directive OPS.250.0001.03(A) ECF 15-3 at p. 1. The record shows Bryant-El received two notices that his mail had been withheld. The first, dated February 3, 2017, reflects that two sexually explicit photos were withheld pursuant to OPS.250.0001.05(C)(3)(b)(vi), ECF 15-2 at p. 8, which states that "[m]ail room staff shall inspect all incoming inmate mail, regardless of form to ensure the mail . . . [d]oes not . . . [d]epict or contain sexually explicit material, nudity, or obscenities[,]" ECF 15-3 at p. 4. A second notice, dated May 22, 2017, shows that a page written in magic marker was withheld pursuant to OPS.250.0001.05(C)(3)(b)(ii), ECF 15-2 at p. 9, which states that "[m]ail room staff shall inspect all incoming inmate mail, regardless of form to ensure the mail . . . [d]oes not . . . [h]ave aftermarket alterations, such as paint, crayon, marker ink, glitter, cloth, or string[,]" ECF 15-3 at p. 4.

In the declaration attached to his opposition, Bryant-El asks for discovery to obtain testimony from Captain Werner about the letter and 16 pictures purportedly withheld for one month and eighteen days, procedural information about mail collection at NBCI, and similar

complaints written by other prisoners to show a systematic ongoing failure by defendants to comply with the Constitution. ECF 19-3 at p. 2. In this district, discovery may not commence unless ordered by the Court, the parties agree, or a Scheduling Order has been issued. *See* Local Rule 104.4 (D. Md. 2018).[4] A scheduling order has not been issued in this case and there is no agreement between the parties to begin discovery.

Federal Rule of Civil Procedure 56(d) provides that:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
(1) Defer considering the motion or deny it;
(2) Allow time to obtain affidavits or declarations or to take discovery; or
(3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (internal citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing the affidavit requirement of former Rule 56(f)).

"'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting

---

[4] "[D]iscovery shall not commence and disclosures need not be made until a scheduling order is entered."

5

*Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011), *rev'd on other grounds*, 135 S. Ct. 1338). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rev'd on other grounds, Gardner v. Ally Fin. Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (alteration in original) (internal citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006) (citing *Strag*, 55 F.3d at 954), *aff'd*, 266 Fed. App'x 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Bryant-El argues that he needs discovery to "adduce testimony" from Captain Werner about the sixteen pictures and letter which allegedly were delayed. ECF 19-3 at 1. Captain Werner declares that he never told Bryant-El about such pictures and a letter and Bryant-El offer no declaration or other verified evidence to support his assertion. ECF 20-1 at ¶ 5. The court is satisfied that the claims presented can be considered on a motion for summary judgment.

## STANDARD OF REVIEW

"'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). Because a Rule 12(b)(6) motion challenges the legal sufficiency of the complaint, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations.

*Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)) (further internal citation omitted). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Because plaintiff is self-represented, his submissions should be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

### I.   Eleventh Amendment

Preliminarily, defendants move to dismiss the claims brought against them in their official capacities. Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits for damages in federal court brought by its citizens or the citizens of another state, unless it consents. *See Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (internal citation omitted); *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (internal citations omitted). "It is clear, of course, that in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State*, 465 U.S. at 100.. (citing *Florida Dep't of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981) (per curiam)). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-104, it has not waived its immunity under the Eleventh Amendment to suit in federal court.

The Eleventh Amendment also bars claims against state employees in their official capacity. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection") (internal citation omitted). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Rose and Bennett are employed at NBCI and are state employees. Consequently, the complaint fails to state a claim against them in their official capacities. Accordingly, the claims for monetary

damages against Rose and Bennett in their official capacities will be dismissed for failure to state a claim on which relief can be granted.

## II.     Personal Participation

For liability to exist under 42 U.S.C. § 1983, a defendant must be personally involved in the alleged violation. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). First, Bryant-El does not allege with specificity that Rose or Bennett were involved personally in the alleged improper withholding or delay of his mail, but rather indicates that they were involved generally in handling inmate mail. ECF 1 at pp. 4-5. To the extent Bryant-El may intend to hold Rose culpable because she is a mailroom supervisor, the liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability may attach under §1983 if a plaintiff can establish three elements: (1) the "supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," (2) the "supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* at 799 (internal citation omitted). Bryant-El's allegation are insufficient to find Rose culpable based on supervisory liability, as they fail to allege Rose's actual or constructive knowledge of the alleged mail withholding, Rose's

deliberate indifference to the alleged wrongdoing, or an affirmative causal link between Rose's actions and the constitutional injury Bryant-El claims he experienced.

## III. Constitutional Claims

### A. First Amendment

Inmates have a limited right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (internal citations omitted). Regulations that affect the sending of mail to prisoners are concerned centrally with maintenance of prison order and security, and are measured under the reasonableness test first applied in *Turner v. Safley*, 482 U.S. 78 (1987). Such regulations are valid if reasonably related to legitimate penological interests, giving prison officials considerable deference in regulating the delicate balance between prison order and demands of "outsiders" who seek to enter the prison environment. *Id.* at 89. While prisoners' constitutional rights may be limited in scope, "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The United States Court of Appeals for the Fourth Circuit has held that the First Amendment protects an inmate's "right to file a prison grievance free from retaliation." *Booker v. South Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017). However, Bryant-El does not assert, nor does the record suggest, any unlawful retaliatory animus in the withholding of his pictures or the purported delay or mishandling of other incoming materials. Bryant-El neither describes the nature of the items he alleges were delayed for one month and eighteen days nor alleges that they involved a prison grievance or issue involving access to the courts to give rise to a First Amendment claim.

Bryant-El also alleges that his Fourteenth Amendment rights were violated. To state a claim for relief under this Amendment's Equal Protection Clause, a plaintiff must show that he "has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Because the complaint presents no such allegations, there are no grounds for an Equal Protection claim.

To the extent Bryant-El may claim that defendants' actions violated prison policy and violated his rights under the Due Process clause of the Fourteenth Amendment, such a claim fares no better. A failure to follow prison policy is not sufficient to state a due process claim without a constitutional violation. *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *see also Jackson v. Sampson*, 536 Fed. App'x 356, 357–58 (4th Cir. 2013) ("[P]rison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation.") (internal citation omitted).[5] Here, at most, Bryant-El alleges several discrete instances where defendants may have improperly processed pieces of his mail. Assuming Bryant-El's letters from ConPal were sent twice to him at NBCI, but did not reach him until a third mailing, even if true, there is no evidence that the letters in fact ever reached NBCI or that either Rose or Bennett mishandled them. Two sexually explicit and one altered picture were withheld, and Bryant-El was provided notice per institutional policy. Bryant-El's unverified claim about additional materials being withheld is directly refuted in Werner's declaration. Notably, Bryant-El's declaration does not attest to the veracity of his claim that Werner told him there were an

---

[5] Unreported cases are cited not for any precedential value, but for the soundness of their reasoning.

additional sixteen additional pictures and one letter being withheld. Bryant-El's generalized request not only lacks specificity as to how discovery of this is essential to his opposition to the dispositive motion, but also fails to show how, if this information was obtained, if would give rise to a genuine issue of material fact. To the extent that Bryant-El wants similar inmate complaints to show a systematic infraction, or the names of other mailroom employees, he does not show how this information is necessary to respond to defendants' motion or how it will give rise to a genuine issue of material fact.

Viewing these allegations in the light most favorable to Bryant-El, there is no genuine dispute of material fact to show a constitutional violation. None of Bryant-El's allegations rises to the level of a First or Fourteenth Amendment violation. Accordingly, defendants are entitled to judgment as a matter of law, and the court will grant summary judgment as to Bryant-El's claims against them in their personal capacities. To the extent Bryant-El presents claims arising under state law, the court declines to exercise supplemental jurisdiction over them.

## CONCLUSION

For these reasons, the court will in a separate order GRANT defendants' Motion to Dismiss or for Summary Judgment.

3/27/19
Date

Catherine C. Blake
United States District Judge